UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Douglas Earl Leiter,  
a/k/a William Jackson,

        Petitioner,

v.

Kathleen Kenney, Assistant Director,  
and Ron Rodgers, Acting Administrator for  
the United States Bureau of Prisons Office of  
General Counsel,[1]

        Respondents.

Civ. No. 15-2336 (JNE/BRT)

**REPORT AND RECOMMENDATION**

---

Douglas Leiter, Federal Prison Camp-Duluth, P.O. Box 1000, MN 55415, *pro se* Petitioner.

Ana H. Voss, Bahram Samie, and D. Gerald Wilhelm, United States Attorney's Office, counsel for Respondents.

---

BECKY R. THORSON, United States Magistrate Judge.

The Petitioner, Douglas Leiter, a/k/a William Jackson, challenges the loss of 41 days of good conduct time resulting from a disciplinary determination that he violated Bureau of Prisons Disciplinary Code 196(A), Attempted Use of the Mail for Illegal Purposes. Petitioner captioned this action as follows: "Bill in Equity for Specific Performance on Contract, Plea in Abatement of Administrative Process and Writ of

---

[1] Petitioner is detained at the Federal Prison Camp in Duluth. The current warden of FPC–Duluth is Christopher Nickrenz. Accordingly, Nickrenz should be substituted as the respondent in this matter. *See* 28 U.S.C. § 2242 ("Application for a writ of habeas corpus . . . shall allege . . . the name of the person who has custody over him . . . .").

Habeas Corpus." (Doc. No. 1.) On May 18, 2015, this Court construed Petitioner's initial filing as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 6.) Petitioner also moves for an injunction to prevent the BOP from interfering with his mailings. For the reasons that follow, this Court recommends that the petition and request for injunctive relief be denied.

Petitioner also filed a broad swath of documents under seal. (Doc. Nos. 1, 13, 14, 15.) On August 6, 2015, this Court issued an Order to Show Cause directing Petitioner to explain why these documents should remain under seal from public view. (Doc. No. 17.) Petitioner responded but failed to establish good cause. Therefore, the Court recommends that these documents be unsealed.

## BACKGROUND

On November 14, 2013, Petitioner, using an alias of William Jackson, attempted to mail a certified envelope to the Office of Inspector General of the U.S. Department of the Treasury in Washington, D.C. Included in the envelope was correspondence addressed to Eric Thorson, Office of the Inspector General, regarding unsettled accounts receivable and accounts payable via an identified account number for a sum certain of Four Thousand Nine Hundred Forty Eight and 90/100 dollars. Petitioner also included IRS Form 56, designating Inspector General Eric Thorson as his substitute fiduciary. (Doc. No. 11, Declaration of Kevin Nikes ("Nikes Decl.") ¶ 9.)

On November 15, 2013, Petitioner received a copy of an incident report detailing his attempted violation of Code 196(A). (*Id.*) The reporting officer indicated his belief

that Petitioner was attempting to create a fictitious tax obligation for Inspector General Thorson.

On December 9, 2013, a hearing was held before a Disciplinary Hearing Officer ("DHO"). (Nikes Decl. ¶ 12.) Although Petitioner was entitled to call witnesses and have a staff representative present, he expressly declined both options. (Nikes Decl. ¶ 13, Ex. G, Hearing Report at 1.) Petitioner submitted documents and made a statement, summarized in the DHO report as follows:

> Prior to my indictment the firm I was with made a series of deposits between 2007 and 2008 for insurance with the Treasury. The numbers on my letters refer to the last two deposits made. I mailed those documents which were notarized here. I received two correspondences from the IRS in Ogden, Utah. I have sent multiple documents/bills pertaining to this. I assumed if I was doing something wrong someone here would have told me. I am on mail monitoring so everything I send is reviewed. Every one I sent out looks exactly like the one you have there. This is legal all you have to do is talk to the Treasury. Nobody from any office has ever told me this was improperly filed. Basically I am going off the IES response saying this was filed. Based on what I sent it establishes a fiduciary relationship, not with Mr. Thorson but his office. This was acknowledged when they accepted by mailing. I received the 3699 twice.

(*Id.*)

The DHO issued a written report on December 13, 2013. In determining that Petitioner violated Code 196(A), the DHO relied on his correctional experience with the Sovereign Citizens movement. (Nikes Decl. ¶ 15.) Sovereign citizens "are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior. The FBI has labeled the sovereign citizens a domestic terrorist group." *United States v. Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir. 2013) (citing "Sovereign Citizens: A Growing Domestic Threat to

Law Enforcement," FBI Law Enforcement Bulletin (Sept. 2011)). "The goal of some sovereign citizens is the recovery of money from the United States that they actually—in the form of taxes—or purportedly paid to the government." *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011). As reported by the FBI,

> Sovereign citizens view the USG [U.S. government] as bankrupt and without tangible assets; therefore, the USG is believed to use citizens to back U.S. currency. Sovereign citizens believe the USG operates solely on a credit system using American citizens as collateral. Sovereign citizens exploit this belief by filing fraudulent financial documents charging their debt to the Treasury Department.

*El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 750 (7th Cir. 2013) (quoting "Sovereign Citizens: An Introduction for Law Enforcement" 3 (Nov. 2010)).

According to the DHO, "law enforcement personnel have observed Sovereign Citizens attempt to satisfy debts through the creation of a fiduciary relationship, primarily with government officials. . . . using the IRS Form 56 is an explicit attempt to harass, intimidate, and extort a government official." (Nikes Decl. ¶ 16.) The DHO also cited the purpose behind the Court Security Improvement Act, 18 U.S.C. § 1521, which is to prevent "harassment, intimidation, and extortion of government officials through the threat of false liens . . . . " (*Id.* ¶ 17.) The DHO reasoned that Petitioner's conduct was "consistent with the Sovereign Citizen[s'] ideology" and that Petitioner did not have a fiduciary relationship with Eric Thorson. (*Id.* ¶ 18.) Therefore, the DHO concluded that Petitioner was using the mail for the illegal purpose of attempting to make Thorson or the

4


Treasury Department liable for his debt. The DHO sanctioned Petitioner by revoking 41 days of good time credit.[2]

## ANALYSIS

### I.     Habeas Petition

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas corpus petition is the appropriate vehicle for challenging a refusal to restore good conduct time where restoration would shorten the prisoner's sentence. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Portley-El v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002) ("[T]he Court held in *Preiser* that habeas corpus . . . is the exclusive federal remedy when a . . . prisoner seeks restoration of good time credits taken away by a prison disciplinary proceeding.").

Depriving an inmate of good time credits for disciplinary reasons "implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002). When a prison disciplinary hearing may result in the loss of good time credits, due process demands that the inmate receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his

---

[2]     The DHO also revoked commissary and email privileges for six months. (Hearing Report at 4.) Petitioner does not challenge this punishment. *See Homen v. Hasty*, 229 F. Supp. 2d 290, 295 (S.D.N.Y. 2002) ("It is well established that a prisoner cannot challenge the loss of [visitation, telephone, and commissary] privileges by way of a habeas corpus petition under 28 U.S.C. § 2241.").

defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolf v. McDonnell*, 418 U.S. 539, 563–567 (1974)).

Petitioner received advance written notice of the charges against him, an opportunity to present evidence and call witnesses at his hearing, and a written statement explaining the reasons for his discipline. All three due process factors were satisfied in the instant case.

Petitioner argues that he was denied due process because the DHO did not call Eric Thorson as a witness at his hearing. However, Petitioner explicitly *declined* the opportunity to present witnesses at his hearing. Petitioner did state as follows: "This is legal all you have to do is talk to the Treasury." (Nikes Decl. ¶ 13.) Generously construed, this could be viewed as an oblique request for a witness or a statement from someone at the Treasury Department. Even so, the BOP has "broad discretion to reject an inmate's request for institutional security reasons, to prevent the undermining of prison authority, to foster correctional goals, to *exclude irrelevant or unnecessary testimony*, or testimony which would create a risk of reprisal." *Brown v. Frey*, 889 F.2d 159, 167 (8th Cir. 1989) (emphasis added). Petitioner fails to explain, and this Court is unable to discern, how the requested evidence could have helped his case. If asked, the Treasury Department likely would have confirmed what the DHO already knew about the Sovereign Citizens and their illegal use of IRS Form 56.

Due process also requires that a prison disciplinary board's findings be supported by "some evidence in the record." *Hill*, 472 U.S. at 454. This standard "does not require

examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56.

Petitioner argues that the prison disciplinary board did not elicit any evidence that the alleged contracts between himself and Mr. Thorson were invalid. Petitioner explains that he mailed the same IRS Form 56 to Mr. Thorson on two previous occasions. The Treasury Department's receipt and failure to return these items, according to Petitioner, demonstrates an "acknowledged relationship." However, this Court's only inquiry is to determine whether there is "some" or "any" evidence in the record to support the imposed discipline. Clearly there is. The DHO reviewed Petitioner's mailing and determined, based on his correctional knowledge, that it was consistent with the ideology and practices of the Sovereign Citizens. This is sufficient to uphold the discipline. *Hill* at 457 ("The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board."); *see also Gomez v. Graves*, 323 F.3d 610, 612 (8th Cir. 2003) ("[C]ourts are to give deference to prison officials and should intercede in prison discipline cases only when the sanctions are wholly unsupported by the record.").

## II.   Injunctive Relief

Petitioner requests an injunction directing the BOP to release the mail that was subject to the incident report and to refrain from interfering with his mail any further. As noted in this Court's May 18, 2015 Order, this claim must be brought in a separate civil

complaint, not in a habeas petition. (Doc. No. 6. at 1 n.1 (citing *Spencer v. Haynes*, 774 F.3d 467, 470–71 (8th Cir. 2014)). Accordingly, Petitioner's request for an injunction should be denied.

### III. Sealed Documents

The general public has a "common-law right of access to judicial records." *Nixon v. Warner Commc'n*, 435 U.S. 589, 597 (1978). This right of access "is not absolute, but requires a weighing of competing interests." *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990). Public access to judicial records "bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings, and to 'keep a watchful eye on the workings of public agencies.' It also provides a measure of accountability to the public at large, which pays for the courts." *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (quoting *Nixon*, 435 U.S. at 598) (internal citations omitted).

Petitioner filed his Petition (Doc. No. 1), reply brief (Doc. No. 13), a "Verified Affidavit" to "Impeach Claims of Fact and Inferences Made in Respondent's Brief and Declaration of Kevin Nikes" (Doc. No. 14), and a BOP form regarding the confiscation of property (Doc. No. 15) under seal. All of these documents were filed in support of Petitioner's claim. They were meant to persuade. This Court was not persuaded, but the documents were certainly considered and relevant to this Court's determination regarding the merits of this action. The right of public access attaches because the documents at issue informed this Court's reasoning. *See United States v. Hubbard*, 650 F.2d 293, 317

(D.C. Cir. 1980) (denying public access partly because the documents at issue were not "relied upon by the trial judge in his decision.").

Petitioner argues that he has a proprietary interest in his own name, which is why he filed this action as a "Bill in Equity." (Doc. No. 19 at 7.) Courts can issue protective orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Petitioner's name is publicly available, not a trade secret. *See Strategic Directions Group, Inc. v. Bristol-Myers Squibb Co.*, 293 F. 3d 1062, 1064 (8th Cir. 2002) ("To qualify as a trade secret under [Minnesota law]," the information "must not be generally known nor readily ascertainable."). Petitioner goes on to cite the Trading with the Enemy Act of 1917, the Emergency War Powers Act, and the Emergency Banking Relief Act. (*Id.* at 4.) Petitioner fails to explain why these enactments justify secrecy in the instant case.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Christopher Nickrenz be substituted as the Respondent in this matter;

2. Douglas Leiter's petition for a writ of habeas corpus under 28 U.S.C § 2241 (Doc. No. 1) be **DENIED**;

3. Petitioner's request for injunctive relief (Doc. No. 1 at 11) be **DENIED**;

4. The documents and attachments filed at Doc. Nos. 1, 13, 14, and 15 be unsealed by the Clerk's Office; and

     5.     This action be **DISMISSED WITH PREJUDICE**.

Date:  October 26, 2016

                                    *s/ Becky R. Thorson*
                                    BECKY R. THORSON
                                    United States Magistrate Judge

## NOTICE

This Report and Recommendation does not constitute an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation by **November 10, 2016**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).